**Stephen BERG, et al., Plaintiffs,**

v.

**FIRST AMERICAN BANKSHARES, INC., et al., Defendants.**

Civ. A. No. 83–3887.

United States District Court, District of Columbia.

Oct. 19, 1984.

Sara E. Lister, Patterson, Belknap, Webb & Tyler, Washington, D.C., David J. Eiseman, Golenbock, Eiseman, Assor & Bell, New York City, for plaintiffs.

Paul C. Warnke, J. Griffin Lesher, Robert P. Reznick, Kathy E. Manning, Washington, D.C., for defendants.

## MEMORANDUM OPINION

NORMA HOLLOWAY JOHNSON, District Judge.

This case and a related class claim (*Kas v. Financial General Bankshares, Inc.*, C.A. 82–1996) arise out of a private merger involving Financial General Bankshares, Inc. (Financial General), a Virginia corporation, pursuant to which all publicly held shares of stock in the corporation, including those of the plaintiffs in both suits, were cancelled and converted into a right to receive a specified amount of cash. As a result of this merger, the entire interest in Financial General was acquired by FGB Holding Corporation (FGB), another Virginia corporation. Since the merger, the new company has been known as First American Bankshares, Inc. Plaintiffs brought this action for money damages against the defendants alleging a violation of federal securities laws, common law fraud, and breach of fiduciary duties in connection with the merger which was approved on August 11, 1982, by over two-thirds of the relevant shareholders of Class A common stock held by plaintiffs.

Plaintiffs are forty-six separately named individuals, each of whom was an owner of Class A common shares of Financial Gener-

al. Plaintiffs claim that the defendants engaged in a fraudulent scheme to acquire the Class A common shares by misleading and deceiving two thirds of the Class A shareholders through a proxy-information statement to vote in favor of the proposed plan of merger by which the Class A shareholders would receive $28.00 per Class A share. Plaintiffs purport to have been holders of approximately 12% of such shares prior to the merger. As damages, plaintiffs seek the $5.80 per share difference between the $28.00 paid for the Class A shares pursuant to the merger and the $33.80 paid for the common shares when control of the company was acquired through a previous tender offer in March and April 1982, the legality of which plaintiffs do not challenge in this lawsuit.

The basis of plaintiffs' claim, as set forth in the original complaint filed August 11, 1983, is, in essence, that plaintiffs were not paid enough for their Class A stock. Plaintiffs allege that the manner and method by which their shares were cancelled and converted violated federal securities laws, and also constituted a fraud upon plaintiffs in violation of the common law of Virginia and a breach of common law fiduciary duties. The gravamen of plaintiffs' complaint is that defendants issued a false and misleading proxy statement which contained material omissions and misstatements in violation of Sections 10(b), 14(a), and 13(e) of the Securities and Exchange Act, 15 U.S.C. 78(j), et seq. (1982).

The complaint in this case was originally filed in the United States District Court for the Southern District of New York. 576 F.Supp. 1239. On December 28, 1983, plaintiffs filed an amended complaint which added a sixth cause of action against four of the named defendants. In the added count, plaintiffs assert that the acquiring group, the defendants Adham, al Fulaij, Darwaish, and Credit and Commerce American Investment, B.V., violated the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961, et seq. (1982). In this regard, the complaint alleges that these defendants were an "enterprise" within the meaning of the RICO statute and participated in a pattern of racketeering activity involving fraud in connection with the sale or purchase of securities. Following the amendment of the complaint, the case was transferred to this court pursuant to 28 U.S.C. § 1404(a). The case is presently before this Court on a motion by defendant Kamal I. Adham to dismiss the sixth count of the complaint; i.e., the RICO count. For the reasons appearing hereafter, the motion to dismiss will be granted.

Defendant Kamal I. Adham moves this Court, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, for entry of an order dismissing the sixth cause of action of the amended complaint alleging violation of the federal RICO statute. In a motion to dismiss pursuant to Rule 12(b)(6), the moving party bears a heavy burden of persuasion. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). It is well established that a complaint should not be dismissed "unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.*

In support of the motion to dismiss, defendant Adham contends that the amended complaint fails to allege predicate racketeering acts upon which a RICO claim can be based; that plaintiffs have not alleged an injury cognizable under RICO; that the complaint fails to allege the conduct of an enterprise's affairs through a pattern of racketeering activity; that the complaint fails to state securities law convictions or criminal offenses as the necessary predicate acts constituting a pattern of racketeering activity under RICO; and that the addition of Count VI in the amended complaint is no more than an attempt to derive windfall treble damages under the guise of RICO.

Plaintiffs' amended complaint alleges violation of § 1962(c) of RICO. That provision provides as follows:

It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign com-

merce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

18 U.S.C. § 1961 defines the conduct which falls within the scope of RICO. "Racketeering activity" includes the commission of an act (1) "chargeable" as one or more stated state law felonies, or (2) "indictable" under one or more stated provisions of federal law. 18 U.S.C. § 1961(1). Among the federal crimes which can serve as the so-called "predicate offenses" for purposes of RICO are those involving fraud in the sale of securities which are punishable under federal law. *Id.* at 1961(1)(D). Under § 1961(5), a

> "pattern of racketeering activity" requires at least two acts of racketeering activity, one of which occurred after the effective date of this chapter and the last of which occurred within ten years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity.

18 U.S.C. § 1964(c) sets forth a private cause of action and provides for treble damages. That section provides:

> Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including reasonable attorney's fees.

■ It appears, therefore, that under this statutory scheme, there are four express elements of a private RICO damage action to consider in deciding whether a RICO claim has been stated. Those elements are: (1) "fraud in the sale of securities", (2) a "pattern of racketeering activity", (3) an injury in "business or property by reason of a violation of § 1962", and (4) an "offense ... punishable under any law of the United States."

Defendant contends that the plaintiffs have failed to satisfy any of the independent burdens imposed upon them by the statute and that, therefore, count six of the amended complaint must be dismissed.

■ The Court first turns its attention to the issue of whether the amended complaint alleges a predicate racketeering act upon which civil liability under RICO can be based. Plaintiffs have alleged securities law violations as the acts necessary to maintain the RICO claim and have invoked § 1961(1)(D) which provides that offenses involving fraud in the sale of securities which are punishable under federal law will serve as predicate offenses. Defendants contend that the technical reporting and disclosure violations alleged to have been committed by defendants in this case do not constitute fraud in the sale of securities as that phrase is used in RICO because the statute was drafted to reach only those offenses most often associated with organized crime. In recent years there has been mounting controversy in the federal courts over the proper limits upon the use of RICO in cases far removed from the context which Congress had in mind when it enacted the statute. RICO was passed as part of the Organized Crime Control Act of 1970, Pub.L. 91–452, 84 Stat. 941. Its primary purpose was to create new tools to help "cope with the infiltration of legitimate businesses" by organized crime. *United States v. Turkette*, 452 U.S. 576, 589, 101 S.Ct. 2524, 2531, 69 L.Ed.2d 246 (1981). Congress desired to attack the problem of organized crime, not the problems of corporate control and risk arbitrage. *Dan River, Inc. v. Icahn*, 701 F.2d 278, 291 (4th Cir.1983). RICO is primarily a criminal statute aimed specifically at curtailing the infiltration of business enterprises by organized crime. In various hearings, reports, and floor debates in the years leading up to the passage of the Organized Crime Control Act, securities fraud had been linked to organized crime only in the context of stock thefts, stock counterfeiting, and large scale market manipulations. Bridges, *Private RICO Litigation Based Upon Fraud in The Sale of Securities*, 18 Ga.L.Rev. 43 (1983).

■ In fashioning legislation with that purpose in mind, Congress created a broad statute, the scope of which extends far beyond activities relating to organized crime. The plain language of the statute provides that "any person" can be found liable under the civil provision of RICO. 18 U.S.C. § 1964. Although it is undisputed that RICO was originally enacted to address the problem of organized crime in this country, there is no language in the statute requiring that a defendant's activity relate to or connect with organized crime. Moreover, the clear and overwhelming majority of courts which have addressed this question have rejected any attempt to add an "organized crime" requirement onto the statutory terms of 18 U.S.C. § 1964(c). It is certain conduct, not a certain status, that is prohibited. *United States v. Forsythe*, 560 F.2d 1127, 1136 (3rd Cir.1977). This Court, therefore, joins the growing number of courts that reject claims suggesting that civil RICO suits must have a nexus with organized crime. *See e.g. Moss v. Morgan Stanley, Inc.*, 719 F.2d 5 (2d Cir.1983); *Schact v. Brown*, 711 F.2d 1343, 1353 (7th Cir.1983), *cert. denied,* — U.S. —, 104 S.Ct. 508, 78 L.Ed.2d 698 (1983); *Bennett v. Berg*, 685 F.2d 1053, 1063 (8th Cir.1982), *aff'd en banc*, 710 F.2d 1361 (8th Cir.1983), *cert. denied sub nom Prudential Ins. Co. v. Bennett*, — U.S. —, 104 S.Ct. 527, 78 L.Ed.2d 710 (1983); *Kimmel v. Peterson*, 565 F.Supp. 476, 490–93 (E.D.Pa.1983); *Bankers Trust v. Feldesman*, 566 F.Supp. 1235, 1239–40 (S.D.N.Y. 1983).

The Court next turns to the second element of a RICO claim, the existence of a "pattern of racketeering activity." Plaintiff alleges that in the instant case, the predicate offenses giving rise to the existence of a "pattern of racketeering activity" consist of two separate but related securities frauds within a ten year period. The first violation was in connection with the initial purchase of shares in late 1977 and early 1978, and the second violation was in connection with the merger in 1982. Defendant contends that plaintiffs' RICO claim stems from one act, the publication of an allegedly misleading proxy statement, and that this one isolated act is insufficient to satisfy the statute which under § 1961(5) "requires at least two acts of racketeering activity."

■ The plain words of the statute require a "pattern of racketeering activity" which "requires at least two acts of racketeering activity." The word "pattern" includes a requirement that the racketeering acts must have been connected with each other by some common scheme, plan, or motive so as to constitute a pattern and not simply a series of disconnected acts. *United States v. Stofsky*, 409 F.Supp. 609, 614 (S.D.N.Y.1973). This Court finds that the acts alleged by plaintiff, which occurred in connection with the 1977–78 purchase and in connection with the 1982 merger, may be sufficient to constitute a pattern of racketeering activity as required for standing under the RICO statute.

The Court next turns to the third element in a private RICO securities claim, an injury in business or property by reason of a § 1962 violation. Section 1964 makes clear that a private party is entitled to threefold damages for an injury incurred as a direct and proximate result of RICO violations as defined in § 1962. In the instant case, plaintiffs contend that as a proximate result of defendants' RICO violations, the plaintiffs' shares were cancelled at a price lower than that which the defendants would have otherwise had to pay, thus causing plaintiffs' injury. Defendant argues that in order to have standing to bring this action for treble damages under RICO, a plaintiff must show more than simply an injury resulting from the allegedly misleading proxy statement. Defendant contends that plaintiffs lack standing under § 1964(c) because plaintiffs have only alleged injury stemming solely from the underlying predicate acts, and that, therefore, the sixth cause of action must be dismissed. Defendant has characterized the alleged "something more" required for standing as a "racketeering enterprise injury." Defendant alleges that the language of § 1962(c) limits civil recovery to persons

suffering a "racketeering enterprise injury" and does not create a cause of action for those suffering injury only from the underlying predicate acts. Defendant asserts that plaintiffs' injuries have resulted solely from the allegedly misleading proxy statement.

This Court finds that the few courts that have referred to the "racketeering enterprise injury" standing requirement have not presented a clear definition of exactly what it is, and analysis of this issue in the opinions written to date are not uniformly persuasive. A "racketeering enterprise injury" is a slippery concept whose definition has eluded even those courts professing to recognize it. *Alexander Grant and Company v. Tiffany Industries, Inc., et al.,* 742 F.2d 408 (8th Cir.1984). The courts requiring a racketeering enterprise injury rely upon the theory that Congress could not have intended to provide treble damage causes of actions to persons whose only injury stems directly from the predicate acts alone, and that it is simply incomprehensible that a plaintiff suing under the securities laws would receive one-third the damages of a plaintiff suing under RICO for the same injury. In *Slattery v. Costello,* 586 F.Supp. 162 (D.D.C.1984), Judge Sirica of this court discussed the various cases construing the term racketeering enterprise injury and concluded that he was unable to provide a satisfactory definition of the term "racketeering enterprise injury." Moreover, in *Charing Cross, Inc., et al. v. The Riggs National Bank,* C.A. 82–1116 (D.D.C., October 7, 1983), this Court declined to impose the nebulous requirement of a separate racketeering enterprise injury and instead followed the reasonable position of the Eighth Circuit that it is not the role of the courts to arbitrarily limit RICO:

> Insofar as the door of the federal courthouse is similarly opened by RICO in a civil context, we are cautioned by the Supreme Court that broad Congressional action should not be restricted by the courts in the name of federalism. It is beyond our authority to restrict the reach of the statute.

*Bennett v. Berg,* 685 F.2d 1053, 1064 (8th Cir.1982), *cert. denied,* —— U.S. ——, 104 S.Ct. 527, 78 L.Ed.2d 710 (1983).

Finally, the Court turns its attention to the fourth element of a private RICO damage action, the requirement that the defendant commit an "offense ... punishable under any law of the United States." As previously stated, section 1961 defines the conduct which falls within the scope of RICO and defines racketeering activity to include the commission of an act (1) "chargeable" as one or more state law felonies, or (2) "indictable" under one or more stated provisions of federal law. In a securities case, more than a simple securities law violation must be alleged. In *Trane Co. v. O'Connor Securities,* 718 F.2d 26, 29 (2d Cir.1983), the court observed that section 1961 "obviously refers to criminal punishment." Actionable fraud in the sale of securities must rise to the level of a statutory crime. The criminal liability sections of the securities acts require that the defendant act willfully which at the very least would seem to demand more than the minimum level of scienter that suffices for a claim under rule 10b5. The court in *Trane,* however, left "to another day" the question of whether a prior criminal conviction is a prerequisite to a civil RICO action. That issue was decided recently in *Sedima, S.P.R.L. v. Imrex Company, Inc.,* 741 F.2d 482 (2d Cir.1984) where the court held that to bring a private civil RICO action, there must be a "violation", that is, criminal convictions on the underlying predicate offenses. The court in *Sedima* was of the view that Congress intended to refer to injuries caused by the "unlawful" pattern of racketeering. *Id.* at 503. However, the court found that the language of the statute provided no indication as to whether the racketeering activity itself must already have been proven criminal. The court specifically addressed the issue of securities fraud as the predicate offenses to a RICO claim:

> A person who is charged in a civil case with securities fraud (for example, by way of willful misrepresentations in a proxy statement), proof of which is by a preponderance of the evidence, can sure-

ly not be said to have committed "an offense," conviction of which requires proof beyond a reasonable doubt, with all of the traditional constitutional and other safeguards. Criminal violation of the securities laws occurs only with the requisite criminal scienter. Is one to be held liable under a lesser standard of proof in a private right of civil action and, not incidentally, thereby stigmatized as a "racketeer"? It is hard to believe that in adopting civil RICO Congress intended to permit proof of "willful" violations by only a preponderance of the evidence.* Otherwise, two misstatements in a proxy solicitation could subject any director in any national corporation to "racketeering" charges and the threat of treble damages and attorneys' fees.

*Id.* at 499. In holding that the structure of RICO as a whole leads one to the narrower interpretation requiring criminal convictions, the court found that the Act was designed to provide new penalties and remedies to combat conduct which explicitly has already been found criminal. *Id.* at 500. The *Sedima* court distinguished RICO from the antitrust laws where it is possible to bring a civil action even in the absence of criminal conduct:

> RICO liability simply does not exist without criminal conduct, though of course, in a criminal RICO case, the proof of the predicate act convictions may be made under the same indictment, in the same trial and coordinately with the proof of the RICO offenses(s). But in a civil context, there is no way to know whether the conduct in question is "already criminal", a problem compounded by the fact that ordinarily there is a lower burden of proof in civil actions. We conclude that had Congress considered this problem, it would have explicitly required previously established convictions in the context of section 1964(c).

*Id.* at 501.

This Court is persuaded by the sound reasoning of the Second Circuit in *Sedima*

and follows that court in holding that there is a requirement of prior criminal conviction for the predicate acts forming the pattern of racketeering activity for all civil RICO claims. The history of the statute reveals that the objectives of the treble damage provisions of section 1964(c) would not be served if RICO could be used as an alternative and cumulative remedy for private plaintiffs alleging securities frauds for which there have been no convictions. The broad construction given RICO in criminal prosecutions is simply inconsistent with the narrower construction which must be applied in the context of a civil case. There being no criminal convictions for the predicate securities law violation offenses alleged in the instant case, plaintiffs' RICO count will not survive the defendant's motion to dismiss. Therefore, plaintiffs' civil RICO claim must be dismissed for failure to state a claim under that statute.

For the foregoing reasons, count six of plaintiffs' complaint must be dismissed. An Order consistent with this Memorandum Opinion will be issued this date.

---

\* The Securities and Exchange Act of 1934 makes only "willful" violations criminally punishable.

Section 32(a), 15 U.S.C. § 78ff (1982).