Irving KAS, Helen Sonenshine, Plaintiffs,

v.

FINANCIAL GENERAL BANKSHARES, INC., et al., Defendants.

Civ. A. No. 82–1996.

United States District Court, District of Columbia.

Oct. 19, 1984.

On Second Motion for Class Certification March 7, 1985.

Samuel P. Sporn, Schoengold & Sporn, New York City, Kevin R. McCarthy, Kornmeier, McCarthy, Lepon & Harris, Washington, D.C., for plaintiffs.

Robert A. Altman, Paul C. Warnke, J. Griffin Lesher, Robert P. Reznick, Clifford & Warnke, Washington, D.C., for defendants.

## MEMORANDUM OPINION

NORMA HOLLOWAY JOHNSON, District Judge.

Plaintiffs, Irving Kas and Helen Sonenshine, bring this action for declaratory, injunctive and monetary relief, alleging a violation of the Securities Exchange Act of 1934, common law fraud, and breach of fiduciary duty. The plaintiffs are shareholders who seek to represent a class against the defendants Financial General Bankshares, Inc. (Financial General), FGB Holding Corporation (FGB), the directors and officers of FGB, and the individual directors and officers of Financial General. The complaint alleges that a tender offer and proxy statement were materially false and misleading and failed to state material facts in violation of the Securities Exchange Act. The case is currently before the Court on three outstanding motions:

1. A motion by plaintiff for leave to file a second amended complaint;

2. A motion for summary judgment by the defendant Financial General;

3. A motion for class certification.

The plaintiffs in this action were the owners of 190 shares of common stock and 653 shares of Class A common stock of Financial General. Defendant Financial General, a public corporation trading on the American Stock Exchange, is a registered bank holding company primarily engaged

in interstate commercial banking through its subsidiary banks. Since August 11, 1982, the date of the merger which is the subject of this lawsuit, Financial General has been known as First American Bankshares, Inc.

On July 25, 1980, Financial General entered into a definitive agreement with FGB providing for a cash tender offer for any and all common stock of Financial General at a price of $28.50 per share. The agreement expressly provided for purchase of the common stock only and did not include Class A common stock. The agreement also provided that in the event the tender offer was not made prior to December 31, 1980, the proposed tender offer price would increase or decrease in accordance with a factor of 158.3333 times the per share book value of Financial General's common stock at the end of the quarter preceding the quarter during which the tender offer was finally made. This tender offer was subject to prior receipt of regulatory approvals, after which the tender offer was made on March 3, 1982.

Pursuant to the tender offer, 5,158,521 shares of common stock were tendered at a price of $33.80 per share. These shares, combined with the shares FGB already owned, represented approximately 96% of all common stock and approximately 95% of the combined voting equity of Financial General. However, the Class A common stock was not included in this $33.80 bid.

Following a completion of the tender offer, a proposal was made on June 10, 1982, to acquire the remaining stock through a merger. Under the terms of the proposed merger, FGB would buy the remaining outstanding common shares of Financial General for the previous tender offer price of $33.80. In addition, the outstanding Class A common shares would be purchased by FGB at $28.00 per share. On or about July 9, 1982, the Board distributed to Financial General shareholders, a notice of the annual meeting of shareholders to be held August 11, 1982, along with the details of the proposed merger which were contained in an accompanying proxy statement. At the meeting, the merger received the approval of the overwhelming majority of outstanding common shares (96% of which were already in the hands of FGB) and the approval of 70% of the outstanding Class A common shares. The new company became known as First American Bankshares, Inc.

The procedural history of this case reveals that on March 29, 1982, plaintiffs filed the instant suit challenging the acquisition and control of Financial General by Middle Eastern investors over a four year period. The complaint alleged that the principal Middle Eastern investors, Kamal Adham, Abdullah Darwaish, and Faisal Al-Fulaij, had failed to fully and accurately disclose their connections and ties with the Arab governments whose policies are inimical to the interests of Financial General and its subsidiaries; that the amount offered to the common shareholders of Financial General was substantially below the fair value of controlling stock of Financial General; and that once FGB obtained the control of all or substantially all of the shares of Financial General, FGB planned to freeze out the Class A common shareholders. The members of the Board of Directors of Financial General were accused of approving the allegedly illegal and unfair tender offer and of recommending its acceptance by the common shareholders, in breach of the directors' fiduciary duties. Based on these allegations, plaintiffs accused the various defendants of violations of sections 14(d) and 14(e) of the Securities Exchange Act, common law fraud, and breach of fiduciary duties.

After the filing of the complaint, in June 1982 the Board of Directors of Financial General voted its approval of the proposed plan of merger of Financial General into defendant FGB Holding Corporation. Shortly before the shareholders' meeting on August 11, 1982, at which the merger was finally approved, the *Washington Post* carried a story concerning one of the investors, Abdullah Darwaish. Darwaish had until that time been represented by the investors as the Chairman of the Personal

Affairs Department of H.R.H., the Ruler of Abu Dhabi, and the agent of said Ruler's son. The news story reported that Darwaish had recently been removed from these positions and was under house arrest in Abu Dhabi as a result of being accused of embezzling from the Ruler of Abu Dhabi. Because of the making and the approval of the merger and the revelations concerning the arrest of Darwaish, on September 9, 1982, plaintiff moved for leave to file a first amended complaint which would contain the new facts and also a cause of action for violation of section 14(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78n. The Court granted plaintiffs' motion in open court on or about September 30, 1982.

Plaintiffs now have requested leave to amend their complaint a second time to include new facts discovered regarding a director and shareholder of Financial General, Eugene B. Casey, and the alleged true intention of the investors. Plaintiffs also seek to withdraw their challenge to the defendants' tender offer and to limit the proposed members of the Class. In support of the motion to file a second amended complaint, plaintiffs assert that as a result of the completion of discovery on April 7, 1983, new facts and circumstances have been discovered which in the interests of justice warrant the filing of a second amended complaint.

Fed.R.Civ.P. 15(a) provides in pertinent part:

> (a) Amendments.... (A) party may amend his pleadings only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires.

Under this rule, the courts have shown a strong liberality in allowing amendments. *Tahir Erk v. Glenn L. Martin Co.,* 116 F.2d 865, 871 (4th Cir.1941). In the leading case of *Foman v. Davis,* 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962), the Supreme Court established the standard for granting leave to amend.

> If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claims on the merits. In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be "freely given." Of course, the grant or denial of an opportunity to amend is within the discretion of the District Court, but outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion, it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules.

Plaintiffs have proposed a second amendment to the complaint which would, *inter alia,* withdraw their challenge to the tender offer of March 3, 1982, and limit the proposed class members solely to Class A common shares of Financial General as of July 9, 1982. In addition, the proposed amendment would include a claim for misrepresentation or omission of material facts from the proxy statement of July 9, 1982. The material facts which plaintiff contends were misrepresented or omitted from the proxy statement are that Eugene B. Casey, a Director of Financial General and the single largest Class A stockholder, was in seriously failing health and interested in winding up his estate at the time he accepted defendants' offer of $28.00 per Class A common share; that the Class A common shareholders, unaware of this material information, were allegedly misled into believing that the $28.00 offer was a fair one because it was acceptable to the largest shareholder; that certain directors of Financial General had a conflict of interest when negotiating the purchase of Casey's shares since they represented the investors and were also directors of Financial General; that the investors had, in fact, intended immediately after the tender offer to freeze out the holders of the Class A

common shares; that the defendant Abdullah Darwaish was intentionally described by the defendants as agent to the son of the Ruler of Abu Dhabi when he, in fact, no longer was and had already been placed under house arrest in Abu Dhabi for embezzlement; and that as a result of these omissions and misrepresentations, the holders of the Class A common stock of Financial General were prevented from voting objectively on the merger and induced to vote for the conversion of their stock into $28.00 cash pursuant to the proposed merger plan on August 11, 1982.

Plaintiffs argue that there was no undue delay in filing the motion for leave to amend; that the new facts which form the basis of the new claims were discovered during the discovery phase of this case; that these new facts were not known earlier by the plaintiffs and thus could not have been included in the complaint or first amended complaint; and that as soon as these facts came to light, plaintiffs promptly sought to bring these facts to the attention of the Court by filing the instant motion. Plaintiffs also contend that the filing of the second amended complaint would not prejudice the defendants because the complaint and the first amended complaint both alleged failure to disclose material information regarding the Class A common stock and that the proposed second amended complaint merely amplified the plaintiffs' previous charges; and that it is a question of fact to be resolved at trial as to whether Casey's concern with winding up his estate was material to the Class A shareholders.

Defendants contend that the second amended complaint should not be accepted for filing and allege that the motion has caused undue delay in the midst of pretrial and a pending motion for summary judgment; that allowing the plaintiff to file a second amended complaint would seriously prejudice the defendants in the preparation of their case; that the second amended complaint fails to state a claim under the federal securities laws.

■■■ Rule 15(a) mandates that leave to amend "shall be freely given when justice so requires." *See 3 Moore's Federal Practice*, § 15.08[4], at 895–96 (1964). The Court finds that there has been no undue delay in filing this motion. The last deposition was taken on April 7, 1983, and the instant motion was filed some four weeks later. Plaintiffs contend that the new facts alleged in the proferred second complaint were not known earlier and could not have been included in the complaint or first amended complaint.

The Court also finds that there has been no bad faith or dilatory motive on the part of the defendants. While it is true that permitting the plaintiffs to amend their complaint may require a postponement of the trial date to permit further discovery, this is not an adequate reason to deny plaintiffs' motion. A trial date has not yet been scheduled and the case does not appear to require an expedited trial. The Court does not believe that it will be unduly burdened or that the trial will be unduly delayed by granting leave to amend. Nor does the need for additional discovery necessarily constitute sufficient prejudice to deny an otherwise meritorious motion. *See Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 568–69 (3rd Cir.1976).

Of the factors used as criteria to determine the propriety of a motion for leave to amend, the crucial factor is the resulting prejudice to the opposing party. *Howey v. United States*, 481 F.2d 1187, 1190 (9th Cir.1973). The proposed amended complaint unquestionably broadens the scope of this case to include the proxy statement and the circumstances surrounding Mr. Casey's approval of the merger. Accordingly, some additional discovery may be required. However, the Court does believe that granting the motion would not unduly complicate the issues. The amendment which plaintiffs propose is clearly related in substance to the thrust of plaintiffs' original complaint and the first amended complaint in which plaintiffs alleged misstatements and misrepresentations by defendants with respect to the acquisition and control of Financial General. Plaintiffs proposed amendment alleges another facet of mis-

representation by defendants regarding the merger and the proxy statement issued in connection therewith. Therefore, plaintiffs proposed amendment would not necessarily change the direction of this trial altogether, although as previously noted, it may call for some additional discovery. Any hardship defendant might suffer from allowing the complaint to be amended does not amount to the "undue prejudice" which would justify denial of the motion, and to deny it would not be in the interest of justice. *Foman v. Davis, supra.* The Court finds that the claims set forth in the second amended complaint are not frivolous and that plaintiffs ought to be afforded an opportunity to test these claims on the merits. Where there is a lack of prejudice to the opposing party and the amended complaint is obviously not frivolous or made as a dilatory maneuver in bad faith, it is an abuse of discretion to deny such motion. *Howey v. United States, supra.*

For the foregoing reasons and in the exercise of the broad discretion this Court has in deciding a Rule 15 motion, and in light of the strong policy to permit the amending of pleadings, the Court will grant the plaintiffs leave to file a second amended complaint.

The Court having permitted the filing of the second amended complaint, the posture of the case has changed with respect to the plaintiffs' pending motion for class certification and defendants' motion for summary judgment. The Court, therefore, will deny these two pending motions without prejudice to a refiling in view of the new posture of the case as a result of the second amended complaint. An Order consistent with this Memorandum Opinion will be issued this date.

## ON SECOND MOTION FOR CLASS CERTIFICATION

Plaintiffs, Irving Kas and Helen Sonenshine, bring this action for declaratory, injunctive, and monetary relief, alleging a violation of the Securities Exchange Act of 1934, common law fraud, and breach of fiduciary duty. The plaintiffs are share-holders who seek to represent a class against the defendants Financial General Bankshares, Inc. (Financial General), FGB Holding Corporation (FGB), and the directors and officers of FGB. The amended complaint alleges that a July 9, 1982, proxy/information statement, submitted in connection with a proposed merger, was materially false and misleading and failed to state material facts in violation of the Securities Exchange Act. The case is currently before the Court on the plaintiffs' second motion for class action certification.

The plaintiffs in this action, Irving Kas and his daughter Helen Sonenshine, were joint owners of 653 shares of Class A common stock of Financial General. They submitted their shares for payment pursuant to a plan of merger approved by the Class A shareholders on August 11, 1982. Plaintiffs seek an order determining that this action shall be maintained as a class action on behalf of all persons who owned Class A common shares as of July 9, 1982, and who submitted said shares pursuant to the terms of the August 11, 1982, merger. Excluded from the proposed class would be defendants, members of their families, and all corporations, subsidiaries or entities controlled by them. Plaintiffs also seek an order appointing them as class representatives for the above class and appointing counsel for plaintiffs as counsel for the class.

■ The question to be decided here is whether the plaintiff's motion to have this action certified as a class action under Rule 23 Fed.R.Civ.P. should be granted. Preliminarily, the Court notes that the burden is on the plaintiff, the party seeking to utilize the class action device, to establish his or her right to do so. *Newberry v. Washington Post Company,* 71 F.R.D. 25 (D.D.C.1976). In order to discharge this burden the plaintiff must first satisfy all four of the prerequisites found in Rule 23(a) and then establish further that the class he seeks to represent falls within one of the subcategories found in Rule 23(b).

## BACKGROUND

The factual background in this matter has already been set forth in great detail in the Court's Memorandum Opinion previously filed herein on October 19, 1984. Therefore, it is not necessary to discuss at great length the factual background out of which this case arose. Nevertheless, an abbreviated statement of the facts is in order.

On or about July 9, 1982, defendants mailed to the members of the proposed class a notice of annual meeting to be held on August 11, 1982, and a proxy statement which called for a vote by Financial General shareholders on a proposed agreement and plan of merger between Financial General and FGB Holding Corporation. Under the terms of the merger, class members would receive $28.00 per Class A common share if 66⅔ percent of the Class A shareholders voted their approval of the merger.

Plaintiffs allege that the proxy statement stated that Eugene B. Casey (Casey), the single largest owner of Class A common stock with approximately 30 percent had agreed to the price of $28.00 per share and to vote his large holding in favor of the merger. Plaintiffs further allege that the proxy statement misleadingly omitted to state the material fact that Casey, at the time he agreed to the $28.00 offer, was in such poor and failing health that he was solely interested in winding up his personal affairs and, therefore, agreed to accept the allegedly unfair offer. It is plaintiffs' contention that the proxy statement failed to disclose that the defendant investors took advantage of Casey's extremely poor health and unique interest in winding up his personal financial affairs. Plaintiffs also contend that the deliberate or reckless failure to disclose these facts to the holders of the Class A common shares, misled them into believing that the offer of $28.00 was a fair one, when in fact it was not. The merger was ultimately approved.

## DISCUSSION

Federal Rule of Civil Procedure 23(a) requires the plaintiff to satisfy all of the following requirements before a class can be certified: (1) the class must be so numerous that joinder of all members is impracticable; (2) there must be questions of law or fact common to the class; (3) the claims of the representative party must be typical of the claims of the class; and (4) the representative party must fairly and adequately protect the interests of the class. In addition, plaintiff must satisfy one of the elements of Rule 23(b). *Beebe v. Pacific Realty Trust*, 99 F.R.D. 60, 64 (D.Ore. 1983).

Plaintiffs maintain that the four requirements of Rule 23(a) have been met and that a class action is appropriate under Rule 23(b). That section provides in pertinent part:

(b) An action may be maintained if the prerequisites of subdivision (a) are satisfied, and in addition:

\* \* \* \* \* \*

(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members ...".

Defendants oppose class certification on the grounds that plaintiffs have failed to comply with the 90-day requirement for seeking class certification under Local Rule 1–13(b). Additionally, defendants content that because these plaintiffs voted *against* the merger, they are, therefore, atypical representatives, and thus fail to satisfy the requirements of Rule 12(b)(3). And finally, defendants contend that because a large group of Class A shareholders claiming to represent some 72,000 Class A shares has expressly indicated they do not wish to be represented by these plaintiffs and their counsel, plaintiffs therefore, have failed to satisfy the requirements of Rule 12(b)(4) in that they are unable to adequately represent the proposed class and to diligently prosecute the suit in the best interests of the class.

■ The Court first considers defendants' argument that the plaintiffs' motion should be denied for failure to comply with Local Rule 1–13(b) which prescribes a 90-day limit after the filing of a complaint

within which plaintiff must move for certification. In the instant case, on the evening of October 18, 1984, this Court signed a Memorandum Opinion and Order granting plaintiffs leave to file their second amended complaint and to refile for class certification if they so desired. The Order provided that plaintiffs' "second amended complaint shall be deemed as filed this date." However, the Court's Memorandum Opinion and Order were not filed until the following morning on October 19, 1984. The instant motion for class certification was filed on January 17, 1985, 91 days after the Court's order was signed on October 18, 1984, and 90 days after the Court's order was filed on October 19, 1984. The Court determines that the date of filing is the crucial date and that, therefore, plaintiff's motion for class certification was timely filed within 90 days of the filing of the second amended complaint.

Plaintiffs' application appears to satisfy the numerosity and commonality prongs of the Rule 23(a) prerequisites for a class suit. Defendants do not contest the fact that the class is so numerous that joinder of all members is impracticable or that there are questions of law or fact common to the class.

 The Court next considers the requirements of Rule 12(b)(3) that the claims of the representative party must be typical of the claims of the proposed class. In plain terms, the typicality requirement is that the claims or defenses of the class resemble or exhibit the essential characteristics of those of the representatives. Although the claims or defenses of the class members need not mirror each other, Rule 23(a)(3) may be used to screen out class actions when the legal or factual position of the representatives is markedly different from that of other members, even though common issues of law or fact are raised. *Pendleton v. Schlesinger*, 73 F.R.D. 506 (D.D.C.1977). This typicality requirement also impacts on the requirement of Rule 23(a)(4) that the representative parties adequately protect the interests of the class. If the representatives' claims

are not typical of the class, they cannot adequately protect the interests of the absent class members. *See General Telephone Co. v. Falcon*, 457 U.S. 147, 157, n. 13, 102 S.Ct. 2364, 2371, n. 13, 72 L.Ed.2d 740 (1982).

 It is plaintiffs' contention that the typicality requirement focuses on the defendants' conduct and its common effect on the members of the class. They contend that their claims are necessarily typical of the claims of the other class members for the basic reason that the defendants' conduct was directed not toward them alone, but rather toward all Class A shareholders. In essence, the plaintiffs allege that since all Class A shareholders were injured by the same course of conduct, their claims are typical of the class claims. However, the Court determines that the typicality requirement focuses on the representatives' position with respect to the defendants' conduct, and where the representative parties are subject to unique defenses, their claim is not typical of the class. *See McNichols v. Loeb Rhoades & Co., Inc.*, 97 F.R.D. 331, 334 (N.D.Ill.1982). Where it is predictable that a major focus of the litigation will be on an arguable defense unique to the named plaintiff or a small subclass, then the named plaintiff is not a proper class representative. *McNichols v. Loeb Rhoades & Co., Inc., supra.* It is not necessary that the defense asserted against the putative class representative ultimately succeed. Rather, the presence of even an arguable defense peculiar to the named plaintiff or a small subset of the plaintiff class may destroy the required typicality of the class, as well as bring into question the named plaintiff's representation. *J.H. Cohn & Co. v. American Appraisal Associates, Inc.*, 628 F.2d 994, 999 (7th Cir.1980).

 In the instant case, the defendants arguably have an available defense peculiar to the named plaintiffs, in that the plaintiffs voted against the merger for reasons unrelated to any alleged misrepresentations or omissions. Because these plaintiffs did not rely upon the proxy/informa-

tion statement, they are, therefore, perhaps subject to unique defenses which would not be applicable to other members of the proposed class who were allegedly deceived by the proxy statement and, relying upon it, were thus misled into voting in favor of the merger. This defense, which would be peculiar only to the small subclass which voted against the merger, could likely become a major focus of the litigation.

Because the plaintiffs are subject to a unique defense which would not be applicable to all other members of the proposed class, the Court determines that there are genuine concerns under the typicality requirement which should be considered in connection with a discussion of the fair and adequate representation requirement of Rule 23(a)(4).

Finally, in order to properly certify a class, a court must find that the named representatives of the class will "fairly and adequately protect the interests of the class" as required by Fed.R.Civ.P. 23(a)(4). Basic considerations of fairness require that a court undertake a stringent and continuing examination of the adequacy of representation by the named class representatives at all stages of the litigation where absent members will be bound by the court's judgment. Two criteria for determining the adequacy of representation are generally recognized: (1) the named representative must not have antagonistic or conflicting interests with the unnamed members of the class, and (2) the representative must appear able to vigorously prosecute the interests of the claim through qualified counsel. *Nat. Ass'n of Regional Medical Programs v. Mathews*, 551 F.2d 340 (D.C.Cir.1976), *cert. denied* 431 U.S. 954, 97 S.Ct. 2674, 53 L.Ed.2d 270 (1977).

It is defendants' contention that there may exist antagonism between the plaintiffs here and the other Class A shareholders with respect to the appropriate relief. These plaintiffs have requested that the August 11, 1982, merger be declared illegal and "for such other relief as may seem just and proper." Defendants contend that if the merger were to be declared illegal, the plaintiffs may wish to argue for recission. As Class A shareholders, they may seek damages or demand that their shares be held as an investment. As such, the interests of these plaintiffs may be at odds with the relief that other Class A shareholders may seek. *See Efros v. Nationwide Corp.*, 98 F.R.D. 703, 708 (S.D.Ohio, 1983); *Guttmann v. Braemer*, 51 F.R.D. 537 (S.D.N.Y. 1970).

Moreover, defendants contend that plaintiffs are not adequate advocates of the proposed class action. In support of this contention, defendants point to the fact that since this suit was filed on March 29, 1982, not one other stockholder has come forward to intervene in support of the action. It is the contention of the defendants that no stockholder who voted *for* the merger on the basis of the July 9, 1982, proxy/information statement has complained that they were misled by the proxy materials. In a related case pending before this Court, *Berg v. First American Bankshares*, 599 F.Supp. 500 (D.C.D.C. 1984) forty-seven separately named plaintiffs representing approximately 15% of the Class A stock who, like plaintiffs here, also voted *against* the merger, have chosen to sue individually. Because plaintiffs in the *Berg* case also voted against the merger, they would have claims similar, if not identical, to those of the plaintiffs here. However, the *Berg* plaintiffs have evidenced no desire to participate in the instant litigation. In fact, representations have been made to the Court that the plaintiffs in the *Berg* case have no desire to participate in the *Kas* litigation even if these plaintiffs are certified as class representatives. There is no indication that any of the persons who submitted their shares wish to be represented by plaintiffs. The relief which plaintiffs seek for themselves may well not even be desirable for the majority of shareholders who made the decision to vote for the merger.

It is well established that the degree of support which plaintiffs would receive from the shareholders they purportedly represent is a factor which the Court must

consider in determining whether a class should be certified. *Efros v. Nationwide, supra.* The Court determines that plaintiffs here have little or no support from the class of shareholders they seek to represent. In fact, a substantial block of their own fellow class members representing 15% of the Class A stock have chosen to part company and sue on their own.

▮ Although class certification is a matter within the discretion of the trial court, the Supreme Court has emphasized that a class action "may only be certified if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." *General Telephone Co. v. Falcon,* 457 U.S. 147, 161, 102 S.Ct. 2364, 2373, 72 L.Ed.2d 740 (1982). The Court is not convinced that the named plaintiffs have satisfied the requirements of typicality and adequacy of representation. There are arguable defenses peculiar to the named plaintiffs that are not applicable to the majority of the class. In addition, the Court has serious concerns over the lack of support which plaintiffs would receive from the shareholders they seek to represent. Accordingly, the motion for class certification must be denied.

An Order consistent with this Memorandum Opinion will be issued this date.