David Luna VARGAS, et al., Plaintiffs,

v.

Edwin MEESE, III, et al., Defendants.

Civ. A. No. 87–2641–OG.

United States District Court,
District of Columbia.

Oct. 13, 1987.

Kristine A. Poplawski, Washington, D.C., for plaintiffs.

Daniel E. Bensing, Asst. U.S. Atty., Washington, D.C., for defendants.

## MEMORANDUM

GASCH, District Judge.

Plaintiffs have moved the Court that this case be maintained as a class action, pursuant to Rules 23(a) and 23(b)(2) of the Federal Rules of Civil Procedure, on behalf of themselves and a class consisting of: all persons who entered the United States on "H–2" and/or "H–2A" temporary work visas on or after June 26, 1987 to work in the Virginia tobacco harvest, and who seek to file applications for adjustment of status under section 210 of the Immigration and Naturalization Act (the "Special Agricultural Worker" or "SAW" program).

Plaintiffs are Mexican citizens who last entered the United States in July, 1987 on "H–2" temporary work visas to work in the Virginia tobacco harvest. Their visas were issued pursuant to 8 U.S.C. § 1101(a)(15)(H)(ii), for the performance of temporary agricultural work. On the basis of their work in the 1985 and 1986 Virginia tobacco harvest, plaintiffs qualify to seek adjustment of their status to "lawful temporary resident" under the special agricultural worker ("SAW") program created in the Immigration Reform Control Act of 1986, 8 U.S.C. § 1160. Under that statute, applications may be made in the United States or with a consular office abroad. 8 U.S.C. § 1160(b). Those aliens who file nonfrivolous applications for SAW status

are entitled to reside and work in the United States, and to travel abroad without waiving these rights, pending adjudication of their applications. 8 U.S.C. § 1160(d). Plaintiffs seek to file their applications under the SAW program within the United States, and to remain and work here. An INS regulation limits applications made in the United States to persons who were physically present in this country prior to June 26, 1987. 8 C.F.R. § 210.2(c)(1), *published at* 52 Fed.Reg. 16190, 16200 (May 1, 1987), *amended by* 52 Fed.Reg. 28663 (July 31, 1987).

Plaintiffs seek a declaratory judgment that the regulation imposing the June 26, 1987 entry cutoff date is contrary to law, and arbitrary and capricious as applied to persons who have lawfully entered the United States. Plaintiffs also seek injunctive relief to enjoin the Attorney General and the INS from denying to them and their class members benefits under the SAW program on the basis of the entry date cutoff. This Court granted a preliminary injunction to plaintiffs, enjoining defendants from refusing to accept or taking adverse action on plaintiffs' SAW applications.

Plaintiffs assert that the proposed class satisfies the requirements of Rule 23(a) in that it consists of at least 500 persons, such that the class is too numerous for joinder of all members; the challenged validity of the INS regulation imposing a June 26, 1987 entry cutoff date involves questions of law and fact common to the class; the claim of the class members that they are being unlawfully denied the opportunity to file their SAW applications in the United States is identical to the claim of plaintiffs; and, the representative parties will be adequately and fairly represented in the interests of the class.

Defendants "concede that plaintiffs appear to meet most of the requirements for class certification." However, the government submits that there is insufficient information to determine whether plaintiffs have made the necessary showing for class certification. Defendants oppose the motion for class certification on two grounds.

First, they argue that it is not clear that the class meets the numerosity requirements. Second, they argue that it is conceivable that the members of the class might have inconsistent interests, raising questions of whether the named plaintiffs will fairly and adequately protect the interests of the class members.

DISCUSSION

*1. Numerosity*

▮ Rule 23(a)(1) requires that a class be "so numerous that joinder of all members is impracticable." Fed.R.Civ.P. 23(a)(1). In the District of Columbia, numbers of class members from 200 to 400 have sustained the numerosity requirement. *See Larionoff v. United States*, 365 F.Supp. 140 (D.D.C.1973), *aff'd*, 533 F.2d 1167 (D.C. Cir.1976), *aff'd* 431 U.S. 864, 97 S.Ct. 2150, 53 L.Ed.2d 48 (1977). Although plaintiffs must do more than allege numerosity, they need not show a precise number of class members.

▮ Not only is size a factor in determining whether joinder is impracticable, the geographical dispersion of class members has also been found to be a factor presenting an obstacle to joinder. *See Kilgo v. Bowman Transportation, Inc.*, 789 F.2d 859, 878 (11th Cir.1986) ("Practicability of joinder depends on many factors, including for example, the size of the class, ease of identifying its members and determining their addresses, facility of making service on them if joined and their geographic dispersion."); *Calloway v. Westinghouse Electric Corp.*, 642 F.Supp. 663, 671 (M.D.Ga.1986). *But see Batesville Casket Co. (EEO Litigation)*, 35 Empl. Prac.Dec. (CCH) ¶ 34,879 (D.D.C.1984) (stating that although geographic dispersion may be considered on the issue of practicability of joinder, the plain language of Rule 23 requires numerosity, not geographical dispersion). Another factor in determining whether joinder is impracticable is whether the members of the class would be able to pursue remedies on an individual basis.

▮ Plaintiffs argue that the joinder of their class members is impracticable be-

cause of the size of the class, as well as the circumstances of the potential class members. The class includes at least 500 H–2 workers who are currently working or who have just finished working in the Virginia tobacco harvest. Upon termination of their employment at the end of the harvest, the potential class members will of necessity disperse either to find other employment or to return to their homes in Mexico. Plaintiffs argue that the difficulty and expense of joining more than 500 H–2 workers who are working on a temporary basis in the United States renders joinder impracticable.

Defendants have concluded, based on Labor Department statistics, that approximately 531 Mexican aliens entered the United States to commence work on July 1, 1987 or later, in the Virginia tobacco harvest. Because of a regulation that allows entry into the United States up to seven days before the beginning of the approved work period, 52 Fed.Reg. 20556–20557 (June 1, 1987) (to be codified at 8 C.F.R. § 214.2(b)(3)(viii)(B)), the government speculates that the majority of these individuals entered the country prior to June 26, 1987.

Defendants further state that the numerosity requirement can probably be met by plaintiffs, but only "if all or most of these individuals desire to file SAW applications in the United States." Defendants argue that nothing in the record indicates that the remaining Mexican H–2 or H–2A workers desire to file SAW applications in the United States. The government conjectures that many of the potential class members "might prefer continued participation in the H–2 program over filing a SAW application and establishing permanent residence in the United States." The government notes that over the next few days, it will attempt to depose or interview some of the aliens "attempting to file SAW applications at the INS office in Arlington, Virginia," in order to determine whether the numerosity requirement has been met.

Plaintiffs reply that defendants' opposition on the numerosity issue is premised upon erroneous assumptions. First, plaintiffs argue that defendants assume that the class includes only those who wish to file their SAW applications in the United States. Plaintiffs assert that it is irrelevant whether or not some of their proposed class members refrain from applying in the United States if the regulation is declared invalid. Indeed, the scope of the class pertains to those Mexican workers with H–2 or H–2A visas currently working in the Virginia tobacco harvest who are precluded by the challenged regulation from applying for an adjustment of status in the SAW program.

Plaintiffs cite to a decision of the United States Court of Appeals for the Seventh Circuit in which the Court reversed a denial of class certification in a challenge of an executive order. *See Vergara v. Hampton*, 581 F.2d 1281 (7th Cir.1978), *cert. denied*, 441 U.S. 905, 99 S.Ct. 1993, 60 L.Ed.2d 373 (1979) (concerning an executive order that prohibited federal employment of non-citizens). In that case, the Court of Appeals stated that it was unnecessary for plaintiffs to establish that every member of the class desired the relief sought, namely, Civil Service employment. Instead, the numerosity requirement was satisfied by census figures reflecting the number of resident aliens in Illinois and the number of civil service jobs in Illinois. *Id.* at 1283–84.

Plaintiffs further state that defendants erroneously assume that a head count or poll of those individuals who desire to file in the United States would provide a definitive number of class members. Essentially, plaintiffs argue that just because a class member decides today not to file a SAW application does not mean that tomorrow he or she will not have a change of heart. A head count is no indication of the true size of the class, according to plaintiffs.

The Court holds that plaintiffs have met the numerosity requirement of Rule 23(a)(1) of the Federal Rules of Civil Procedure. As defendants have conceded, the class sought to be certified consists of at least 531 individuals. The Court finds the desire of a class member to apply for SAW status to be irrelevant to the issue of numerosity.

2. *Common Questions of Law and Fact*

■ Rule 23(a)(2) states that a prerequisite to the maintenance of a class action is that there be "questions of law or fact common to the class." Fed.R.Civ.P. 23(a)(2). This case involves a challenge of an INS regulation which imposes an entry cutoff date, barring plaintiffs and their class members from filing SAW applications within the United States. The ability to file applications within the United States turns upon the determination of the validity of this regulation, and the propriety of its application to H–2 and H–2A workers who have lawfully entered this country. Plaintiffs argue that the resolution of these legal issues will not be affected by variations in the individual class member's circumstances of eligibility for SAW status. Plaintiffs maintain that the relief sought is merely the ability to file a SAW application in the United States with the INS or a qualified designated entity. Because the validity of the entry cutoff date is a legal issue common to plaintiffs and their proposed class members, plaintiffs assert that they have satisfied the requirements of Rule 23(a)(2). *See Califano v. Yamasaki,* 442 U.S. 682, 701, 99 S.Ct. 2545, 2557–58, 61 L.Ed.2d 176 (1979).

Defendants do not assert any arguments on the issue of common questions of law and fact.

The Court holds that plaintiffs have met the requirement of Rule 23(a)(2) that there are "questions of law or fact common to the class." Indeed, the validity of the challenged regulation which imposes the cutoff date on applications filed within the United States is a common question of law to plaintiffs and the potential class members.

3. *Typical Claims*

■ Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed.R.Civ.P. 23(a)(3). As long as the claims "resemble or exhibit the essential characteristics of those of the representatives," Rule 23(a)(3) will be satisfied. *Kas v. Financial General Bank-*

*shares, Inc.,* 105 F.R.D. 453, 461 (D.D.C. 1984). This requirement ensures that none of the class representatives has claims or defenses unique to them. *Id.* It also prevents the resolution of the representatives' claims on grounds which are inapplicable to the class members' claims despite the presence of common issues of law or fact. *Id.*

■ Plaintiffs argue that there is no danger here of the possibility of a resolution of plaintiffs' claims on grounds which are inapposite to the claims of the class. Without a successful challenge of the entry date cutoff regulation that applies without qualification to all aliens who entered this country after June 26, 1987, plaintiffs cannot achieve their objective of filing their applications. That regulation presents the sole barrier to application within the United States by plaintiffs and their class members. The Eleventh Circuit has held that the typicality requirement of Rule 23 is satisfied where a challenged rule is the sole basis upon which plaintiffs and class members are denied benefits. *See Appleyard v. Wallace,* 754 F.2d 955, 959 (11th Cir. 1985).

Defendants have not raised any arguments on the question of typicality.

The Court holds that the typicality requirement of Rule 23(a)(3) has been satisfied. Plaintiffs have demonstrated that the claims of the class are harmonious with those of plaintiffs. The challenged regulation constitutes the basis of the claims by plaintiffs and their proposed class members.

4. *Fair and Adequate Protection of the Interests of the Class*

■ Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R.Civ.P. 23(a)(4). In order to satisfy the representation portion of the prerequisites to a class action, the Court must find that the representative has no conflict of interest with the class members, and that the representative is able "to vigorously prosecute the interests of the class through qualified counsel." *National Association of*

*Regional Medical Programs v. Mathews,* 551 F.2d 340, 345 (D.C.Cir.1976), *cert. denied,* 431 U.S. 954, 97 S.Ct. 2674, 53 L.Ed. 2d 270 (1977); *Kas, supra,* 105 F.R.D. at 462.

■ Plaintiffs argue that none of the potential class members benefits from the entry date cutoff regulation, and that therefore, no class member has any interest in preserving the rule which plaintiffs seek to have declared invalid.

As noted above, defendants maintain that some of the potential class members might prefer to remain at H–2 status rather than apply for SAW status. For that reason, defendants argue that the relief sought in this case might adversely affect the "subclass of loyal H–2 workers." Defendants postulate that eager SAW applicants might come to the United States under the H–2 program, file SAW applications, and walk away from their H–2 obligations. According to defendants, a grower who has been abandoned by his H–2 workers in this fashion would lose confidence in the H–2 program and make other "(presumably illegal)" arrangements for the next year's harvest. As a consequence, the government asserts that the loyal H–2 workers would find themselves deprived of future H–2 work opportunities.

Plaintiffs are represented by the Farmworkers Justice Fund, Inc., a nonprofit public interest group that works to advance the rights of farmworkers. Their counsel is experienced in federal court practice. Additionally, the Florida Rural Legal Services, Inc., experienced in the representation of farmworkers and in immigration matters, is of counsel in this matter, and will lend its expertise and resources in advancing the H–2 workers' claim. Because of the experience of counsel, the second requirement of the rule for adequacy of representation is satisfied, according to plaintiffs.

Defendants do not assert any arguments concerning the qualifications of plaintiffs' counsel.

The Court holds that the interests of the class will be fairly and adequately protected, and that the requirements of Rule 23(a)(4) are satisfied. The Court finds that there is no conflict of interest between the representatives and the class members, and that the interests of the class will be vigorously prosecuted by the amply qualified and very able counsel for plaintiffs. As stated in this Court's memorandum of October 5, 1987, the government's expressed fear of compromising the H–2 program by allowing these individuals to file their SAW applications is purely speculative. As plaintiffs pointed out, this year's Virginia tobacco harvest has reached its conclusion. The H–2 program will not be undermined by allowing these workers to file SAW applications.

### 5. *Rule 23(b)(2)*

■ According to Rule 23(b)(2), the plaintiffs must further demonstrate that the class action will be maintainable for declaratory or injunctive relief if "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." According to plaintiffs, the cutoff date applies to all persons who were not in the United States before June 26, 1987, and is applied by defendants without regard to manner of entry or the reasons an individual was outside of the country on that date. Plaintiffs seek declaratory and injunctive relief on behalf of themselves and the entire class to permit them to file their applications with the INS or with qualified designated entities in the United States without regard to the June 26th cutoff date.

Plaintiffs do not assert that all of the class members will be successful in obtaining SAW status. They argue that Rule 23(b)(2) is nonetheless satisfied by the fact that declaratory or injunctive relief would remove the common barrier to their filing applications within the United States. *See Sorenson v. Secretary of the Treasury,* 752 F.2d 1433, 1440 (9th Cir.1985), *aff'd,* 475 U.S. 851, 106 S.Ct. 1600, 89 L.Ed.2d 855 (1986). Plaintiffs argue that the proposed class satisfies the requirements of Rule 23(b)(2) because defendants have acted "on

grounds generally applicable to the class" by prohibiting all persons who are not present in the country before June 26, 1987 from filing applications within the United States.

Defendants make no arguments on the issue of Rule 23(b)(2) requirments.

The Court holds that plaintiffs have established the presence of the requirements of Rule 23(b)(2). The Court finds that the application by defendants of the challenged cutoff date to plaintiffs and their proposed class members make final injunctive relief or corresponding relief appropriate with respect to the class as a whole.

CONCLUSION

 Plaintiffs have met the four stated requirements of Rule 23(a) in order to qualify for the maintenance of a class action. The arguments that the government has presented in its papers consist purely of speculation. There appear to be 531 potential class members. Whether or not they arrived in the United States prior to the cutoff date is unclear, but the government has not demonstrated that they did. Whether or not they desire to apply for SAW benefits is irrelevant to the Court's determination of numerosity. The relevant inquiry is whether the challenged regulation precludes the class members as it does the plaintiffs from applying for SAW status at all. The Court finds that the challenged regulation applies to the proposed class members in the same fashion as it does plaintiffs.

ORDER

Upon consideration of Plaintiffs' motion to maintain a class action, defendants' opposition thereto, plaintiffs reply to that opposition, the arguments made in open court, and the entire record herein, it is by the Court this 9th day of October, 1987,

ORDERED that the motion be and hereby is granted; and it is further

ORDERED that plaintiffs are granted leave to proceed as a class action, pursuant to Fed.R.Civ.P. 23(a) and 23(b)(2), on behalf of themselves and a class consisting of

All persons who entered the United States on "H–2" or "H–2A" temporary work visas on or after June 26, 1987 to work in the Virginia tobacco harvest, and who seek to file application for adjustment of status under § 210 of the Immigration and Nationality Act (the Special Agricultural Worker Program).

And it is further

ORDERED that the preliminary injunction entered by this Court on October 5, 1987, be and hereby is extended to include the class members.