Eunice WELLS, et al., Plaintiffs,

v.

ALLSTATE INSURANCE COMPANY,
Defendant.

Civ.A. No. 00–0760–LFO.

United States District Court,
District of Columbia.

Aug. 12, 2002.

Peter Andrew Chapin, Sacks & Chapin, P.C., David Errol Tompkins, Harry C. Lewis, Washington, DC, for plaintiff.

Amy L. Bess, John J. Calkins, Sonnenschein, Nath & Rosenthal, Washington, DC,

Karl Michael Tilleman, Steptoe & Johnson, Phoenix, AZ, for defendant.

*MEMORANDUM*

OBERDORFER, District Judge.

Pending before the court is plaintiff's motion to certify a class of Allstate policyholders or beneficiaries who made a claim for uninsured motorist benefits from March 20, 1997 to the present.[1] Although problems with typicality and commonality preclude blanket certification of the proposed class, plaintiff's allegations support the certification of a narrower one. A class limited to Allstate policyholders or beneficiaries who (1) between March 20, 1997 and October 19, 2000, (2) made a claim for uninsured motorist benefits which Allstate paid in part or in full, (3) for, *inter alia*, bodily injury, and (4) at some or all points during the claims process were represented by counsel satisfies the class certification requirements of Fed. R.Civ.P. 23.

## I. BACKGROUND

The named plaintiff and putative class representative, Eunice Wells, was an Allstate policyholder on January 2, 1998, when she was struck by a car while crossing the street. The driver stopped his car, helped Wells to the curb, and provided his name and pager number before leaving the scene. Neither the name or pager number was correct. Wells suffered bodily injury in the form of a broken leg, which required hospitalization and surgery.

Wells' Allstate policy provided for uninsured motorist coverage up to $25,000. Almost a year after the accident, on December 28, 1998, Wells' then-counsel submitted a claim to Allstate for the full coverage amount, including $7,730 in medical bills and $11,040 in lost wages. Allstate declined to settle her claim until Wells provided a re-

---

1. Plaintiff has proposed a class comprising:

   *i.* All persons who purchased a policy of automobile insurance from Allstate Insurance Company, or were beneficiaries of such policies, *ii.* issued in the District of Columbia between the dates of March 20, 1997, up until the present date, [ ]three (3) years from the date of the filing of the original action in the Superior Court of the District of Columbia, *iii.* who were so unfortunate as to be involved in an automobile collision which involved a[n] unknown or unidentifiable "hit and run" vehicle, or otherwise uninsured motorist, and *iv.* who made a claim for uninsured motorist benefits with Allstate.

   Pl. Mot. at 1.

corded statement and authorization to obtain medical records. By summer 1999, Wells had provided the requested information, but Allstate still refused to settle the claim.

In March 2000, Wells filed a two-count suit in Superior Court. The first count sought recovery of her uninsured motorist benefits.[2] The second count, brought on behalf of the class, charges a violation of the District of Columbia Consumer Protection Procedures Act, D.C.Code § 28–3904 ("Consumer Protection Act"). The complaint alleges that Allstate did not disclose material facts about its claims handling processes,[3] specifically that Allstate:

- "has not divulged to the purchasing public" that it engages "in a course of action designed to specifically deny and/or delay timely uninsured motorist benefits." Am. Compl. ¶ 3.
- "did not inform plaintiff, and others similarly situated ... that [they] would be required to retain counsel and fully litigate [their] claim[s] to a likely trial before a jury in order to collect benefits." *Id.* ¶ 4.
- "failed to advise the plaintiff, and other[s] similarly situated, ... that Allstate Insurance Company ... ha[s] ... a corporate policy in effect [of] often extending low offers of settlement and if claimant insists that he/she is being treated unfairly and refuses to accept same, it adopts a 'scorched earth litigation tactic.'" *Id.* ¶ 11.

In ruling on a motion for class certification, a court does not reach the merits of plaintiff's case, but assumes allegations pled in the complaint are true. *See In re Lorazepam & Clorazepate Antitrust Litig.,* 202 F.R.D. 12, 14 (D.D.C.2001) (citations omitted). However, the court's analysis is not limited to the four corners of the complaint. "A district court certainly may look past the pleadings to determine whether the requirements of rule 23 have been met. Going beyond the pleadings is necessary, as a court must un-

derstand the claims, defenses, relevant facts, and applicable substantive law in order to make a meaningful determination of the certification issues." *Castano v. American Tobacco Co.,* 84 F.3d 734, 744 (5th Cir.1996) (internal footnote and citations omitted).

Following limited discovery for the purposes of class certification, Wells refined her claims to allege that Allstate altered its claims handling procedures as part of its 1994–1997 Claims Core Process Redesign, *see* Tr. 5/29/02 at 80, to the detriment of claimants, but failed to disclose these changes to its customers or the public. As part of that redesign, Allstate refers its uninsured motorist claims to one of three units: a unit for claimants represented by counsel, a unit for non-represented claimants, and a Special Investigations Unit. *See* Tr. 5/29/02 at 11.

There is evidence that claims of those represented by counsel are processed differently from claims of those who do not have attorneys. Allstate's Claims Core Process Redesign Manual contains two matrices listing the steps to investigate and verify damage claims brought by, respectively, claimants represented by counsel and claimants who do not have attorneys. *See* Pl.Ex. 5. These steps may be required, recommended, optional, or not required, depending on the nature of the injury (subjective or objective), whether a subjective injury was the result of an accident involving major or minor impact force, and whether the cause of an objective injury is questionable or not.

There is evidence that in almost every factual scenario involving similarly situated claimants with and without counsel, the insurer requires more steps and paperwork to settle a claim for those represented by attorneys. For example, an individual represented by an attorney who suffers a subjective injury as the result of a minor force accident

**2.** Following protracted litigation, including removal to this court by defendant in April 2000, the parties settled the first count after plaintiff filed a motion for partial summary judgment.

**3.** Plaintiff's complaint contains a second theory of liability: that Allstate violated the Consumer Protection Act through affirmative misrepresen-

tations in the form of false advertising. In an order issued on May 17, 2002 (amended May 23, 2002), the court granted in part Allstate's motion for summary judgment on the basis that the slogan "You're in good hands with Allstate" is mere puffery not actionable as false or misleading advertising. *See* May 23, 2002 Mem. at 2–3.

is required to provide a statement or interview and employment/wage verification. For an individual who suffers the same type of injury, under the same circumstances, but does not have an attorney, the statement or interview is optional and the employment/wage verification is recommended, rather than required. For an individual like Wells—who suffered an objective injury that Allstate characterizes as having questionable causation, and who has an attorney—a statement or interview is required, and additional internal procedures (claimant carrier contact, peer records review, and medical management) are mandatory. If Wells had not been represented by counsel, an interview or statement would have been recommended, the additional procedures of claimant carrier contact and medical management would have been recommended, and peer records review would have been optional. A comparison of the Damage Verification Guidelines (for settlement with represented claimants) and the Damage Investigation Tools Matrix (for claimants without counsel) shows twenty-four instances where a more stringent claims handling procedure applies to the represented segment, and only two cases where a more stringent claims process applies to unrepresented claimants.[4] See Pl.Ex. 5.

Allstate acknowledges that it applies different claims handling procedures to represented and unrepresented claimants, but claims this fosters efficiency rather than delay. See Tr. 5/29/02 at 15–16. But Allstate concedes that claimants represented by counsel receive settlements two to three times greater than those who proceed without counsel, and admits that the goal of the Claims Core Process Redesign was to reduce the level of attorney representation. See Tr. 5/29/02 at 83–84.

Wells argues, in a nutshell, that Allstate policyholders are damned if they do retain an attorney, through a more stringent, lengthy claims settlement process; and damned if they don't, through a denial of their claim or a nominal settlement offer, and that Allstate fails to disclose this information to its customers:

Allstate seeks to gain unfair advantage over the class members by preventing them from seeking legal representation to advise its own policy holders of their rights.... Allstate seeks to delay payment or "low ball" members of the purported class in an effort to gain leverage to negotiate lower claim payments, all to the detriment of the class members. If a class member sought out the advice of an attorney, the defendant embarked on a mission to make the claim process as onerous and peril-frought as possible, seeking "in person" recorded statements, medical and wage authorization releases, [and] making the claim process slow, duplicitous and, ultimately, unfair.

Pl. Mot. at 2–3.

Wells, who retained counsel and received a full settlement only after protracted litigation, falls into the "damned if they do" category. A class of similarly situated individuals, excluding claimants not represented by counsel, satisfies the criteria for class certification set forth in Fed.R.Civ.P. 23.

## II. ANALYSIS

Plaintiff's proposed class is entitled to certification if it meets the numerosity, commonality, typicality, and adequacy requirements of Fed.R.Civ.P. 23(a), and presents a situations where "questions of law or fact common to members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R.Civ.P. 23(b)(3). The plaintiff bears the burden of showing that the Rule 23 requirements have been met. "In order to establish that they are entitled to certification of a class, plaintiffs bear the burden of showing that a class exists, that all four prerequisites of Rule 23(a) of the Federal Rules of Civil Procedure have been met and that the class falls within at least one of the three categories of Rule 23(b) of the Federal Rules of

---

4. A vehicle photo is optional for represented claimants who suffer objective injuries, or subjective injuries as the result of a major impact force accident. For non-represented claimants, a vehicle photo is recommended under both of these circumstances.

Civil Procedure." *Pigford v. Glickman*, 182 F.R.D. 341, 345 (D.D.C.1998); *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997). In circumstances where the class as defined by the plaintiff does not meet the requirements of the Federal Rules, a district court has "broad discretion to redefine and reshape the proposed class to the point that it qualifies for certification under Rule 23." *Wagner v. Taylor*, 836 F.2d 578, 589–590 (D.C.Cir.1987).

## A. Rule 23(a) Prerequisites

### 1. Numerosity

■ Allstate does not dispute that the proposed class, as defined by plaintiff, is sufficiently large to satisfy the numerosity requirement. The proposed class, as defined by plaintiff, numbers in the thousands. The estimate is based on the number of uninsured motorist claims filed with Allstate in the District of Columbia—5,703 between March 1997 and February 2002.

The class to be certified, as defined by the court, is significantly smaller. Although plaintiff believes the 5,703 figure, received in response to an interrogatory posed to Allstate, represents policyholders who filed a claim for bodily injury only, some confusion emerged at oral argument as to whether that number represents all claims filed with Allstate during that time period, or exclusively claims for bodily injury. If some percentage of the 5,703 are *solely* claims for property damages, those claimants would not be part of the proposed class. However, claimants with *both* bodily injury and property damage claims stemming from the same accident would be eligible to participate in the class action.[5] Allstate's corporate representative, Donald Sears, testified that he does not know what percentage of its claims are for property damage alone, as compared to bodily injury claims or claims for both bodily injury and property damage. *See* Tr. 5/29/01 at 18. Accordingly, while the 5,703 figure could be greater (through the inclusion of claimants with property damage as well as bodily injury claims, or claimants who filed after February 2002) or lesser (if Allstate included policyholders with only property claims in its response to plaintiff's interrogatory), the assumption at this point is 5,703 Allstate insureds filed uninsured motorist claims for bodily injury during the relevant time period and are eligible class members.

But only thirty percent of Allstate claimants who suffer bodily injury are represented by counsel, *see* Tr. 5/29/02 at 18, decreasing the class size to roughly 1,700. Assuming that the number of claims filed with Allstate is roughly constant each year, the restriction of the class to those who filed claims prior to the amendment of the Consumer Protection Act in October 2000 would eliminate one-third of the remaining class members.[6] Nonetheless, a class of 1,100 easily satisfies the numerosity prerequisite of Rule 23(a).[7] Within this Circuit, classes of fewer than fifty members have been found sufficiently numerous to satisfy rule 23. *See, e.g., Thomas v. Christopher*, 169 F.R.D. 224, 237 (D.D.C. 1996) ("Although Rule 23 requires no minimum number of class members, numerosity is generally satisfied by a proposed class of at least 40 members."), *aff'd in part and rev'd in part*, 139 F.3d 227 (D.C.Cir.1998); *E.E.O.C. v. Printing Indus. of Metro. Washington D.C., Inc.*, 92 F.R.D. 51, 53 (D.D.C. 1981) ("as few as 25–30 class members should raise a presumption that joinder would be impracticable"). But of course if the number of class members falls short of this range,

---

5. Because Allstate handles combined bodily injury-property damage claims in its "casualty segment," Tr. 5/29/02 at 6, or, in other words, in the same unit that handles pure bodily injury claims, there is no reason to exclude individuals with both types of claims from the class.

6. The class period, at present, extends sixty-five months from March 1997 to potentially August 2002. The time period between the date of Wells' claim, in March 1997, and the amendment of the Consumer Protection Act, in October 2002, is 43 months, or two-thirds of the class period.

7. At the class certification hearing, defense counsel posited a class made up solely of individuals with bodily injury claims, represented by counsel, whose claims had been referred to the Special Investigation Unit, and whose claims had been filed with Allstate prior to the amendment of the Consumer Protection Act. That hypothetical class—which is much more limited than the class to be certified because only two or three percent of claims are referred to the Special Investigation Unit—still had sixty-six members. *See* Tr. 5/28/02 at 43–45.

this order certifying the class is without prejudice to any future challenge defendant may mount to its numerosity.

## 2. Commonality

■ Allstate also does not contest that "there are questions of law or fact common to the class." Fed.R.Civ.P. 23(a).[8] "The commonality test is met where there is at least one issue, the resolution of which will affect all or a significant number of the putative class members." *Kifafi v. Hilton Hotels Ret. Plan*, 189 F.R.D. 174, 176–177 (D.D.C. 1999) (quoting *Lightbourn v. County of El Paso*, 118 F.3d 421, 426 (5th Cir.1997)).

Although the factual particulars of each individual's claim may vary, all members of the proposed class share a common question of law: "[w]hether the lack of disclosure relative to changed claims handling procedures at Allstate as a result of the Claims Core Process Redesign . . . to the insurance purchasing public constituted a material nondisclosure so as to violate the CPPA." Pl. Mot. at 7. In terms of the non-disclosed changes to Allstate's claims handling process that allegedly give rise to a Consumer Protection Act claim, Wells highlights "the punitive provisions relating to UM [uninsured motorist] claimants that exercise their right to counsel" as a change giving rise to common legal issue among potential class members. *Id.* This issue is common to all members of the narrower class defined by the court, and is sufficient to satisfy the commonality requirement of Rule 23.

## 3. Typicality

■ Typicality requires a finding that "the claims and defenses of the representative parties are typical of the claims or defenses of the class." Fed.R.Civ.P. 23(a)(3). "It is satisfied if each class member's claim arises from the same course of events that led to the claims of the representative parties and each class member makes similar legal arguments to prove the defendant's liability." *Pigford*, 182 F.R.D. at 349. Typicality is not met in cases where a class representative's

individual claim is subject to a unique defense:

> [W]here the representative parties are subject to unique defenses, their claim is not typical of the class. Where it is predictable that a major focus of the litigation will be on an arguable defense unique to the named plaintiff or a small subclass, then the named plaintiff is not a proper class representative. It is not necessary that the defense asserted against the putative class representative ultimately succeed. Rather, the presence of even an arguable defense peculiar to the named plaintiff or a small subset of the plaintiff class may destroy the required typicality of the class, as well as bring into question the named plaintiff's representation.

*Kas v. Financial Gen. Bankshares, Inc.*, 105 F.R.D. 453, 461 (D.D.C.1984).

The complaint and class certification motion recount Wells' experience with Allstate and assert it is typical. Specifically, it is alleged that Wells submitted a verifiable claim in December 1998 and provided all requested information, including an in-person recorded statement and blank medical authorization, by summer 1999. Nonetheless, Allstate still refused to pay her claim and forced her to engage in protracted litigation in Superior Court and this court before it settled her claim in full. *See* Pl. Mot. at 9–10. "The handling of Ms. Wells' claims for UM [uninsured motorist] benefits 'fits' the normal practice of Allstate of stalling, and generally being as troublesome as possible, all the while holding the policyholder's money." *Id.* at 10.

Allstate argues that Wells fails to satisfy the typicality requirement for six reasons. First, defendant asserts that the delay in the settlement of Wells' claim was the result of false statements by her then-attorney (that Wells was medically unable to provide the requested statement) and her failure to provide a timely response to Allstate's authorization form for release of wage and medical

---

8. Several of Allstate's objections to class certification could be considered challenges to both commonality and typicality, largely because "[t]he commonality and typicality requirements of Rule 23(a) tend to merge" analytically. *Gener-* *al Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 158, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982). Because Allstate has characterized these as typicality arguments in its opposition brief, they are discussed *infra* in Section I.A.3.

information. Allstate claims this "creates a specific, individual defense to Ms. Wells' claim." Def. Opp. at 11–12.

Allstate's defense would not bar Wells' recovery on her own claim. Taking the allegations in her complaint as true, as required on a motion for class certification, Allstate failed to pay her claim even after she provided all requested information. Her attorney's initial delay may limit her damages, as she cannot reasonably claim that Allstate should have paid out on a claim without receiving some documentation. However, she has a claim that she is owed damages (in form of lost time value of money or the statutory penalty) for Allstate's failure to pay her claim after summer 1999, when she had provided all requested information.

Moreover, Allstate's defense to Wells' claim is not particularly unique. Unlike *Kas*, where the representative plaintiffs were atypical because they "voted against the merger for reasons unrelated to any alleged misrepresentations or omissions ... [and] ... did not rely upon the proxy/information statement," 105 F.R.D. at 461–462, and where the named plaintiffs' own factual circumstances were at odds with the allegations in their complaint, it is not unlikely that Allstate will defend many, if not most, of the class members' claims by alleging that any delay in settlement resulted from the dilatory actions of claimants or their counsel. In fact, defendant argues later in its opposition brief that a "mini-trial" of each class member's claim will be necessary to ascertain whether delay in settlement was the fault of Allstate or the insured.[9]

Second, Allstate argues that Wells, in her complaint, makes certain allegations on behalf of the class that do not apply to her own circumstances. Specifically, Wells hired counsel before she filed her initial claim with the company, received no settlement offer of any amount until after the lawsuit commenced, and never requested alternative dispute resolution. *See* Def. Opp. at 13. Typicality does not require that the representative's claims be identical to class members, but only that " 'named plaintiffs have

incentives that align with those of absent class members so as to assure that the absentees' interests will be fairly represented.' " *Coleman v. Pension Ben. Guar. Corp.*, 196 F.R.D. 193, 198 (D.D.C.2000) (quoting *Kifafi*, 189 F.R.D. at 177). Allstate's distinctions between Wells' circumstances and the allegations relevant, not to her, but to other class members, are not central to plaintiff's misrepresentation theory. For purposes of this putative class action, which alleges Allstate did not disclose to its policyholders represented by attorneys that they would be disadvantaged, in the sense of being subject to a lengthier and more stringent claims process, the procedural twists and turns of Wells' claims process compared to other class members' claims process will not defeat typicality.

The third instance of Wells' supposed atypicality, raised at the class certification hearing, is the referral of her claims to Allstate's Special Investigation Unit. The Special Investigation Unit handles only two to three percent of claims. *See* Tr. 5/29/02 at 46. The Special Investigation Unit handles claims where there is an "indicia of fraud," and therefore employs more detailed and time-consuming claims handling procedures. Tr. 5/28/02 at 29. Although Allstate's corporate representative testified that Wells' claim had the hallmarks of the potentially fraudulent claim, *see* Tr. 5/29/02 at 32, plaintiff's counsel elicited testimony from Sears during cross-examination implying that the reasons for Wells' referral to the Special Investigation Unit may have been pretextual. *See* Tr. 5/29/02 at 68, 74–75. Jay Frank, plaintiff's expert witness, cited the referral of plaintiff's claim to the Special Investigation Unit as "indicative of the fact that she was not getting fast-track treatment and was, because she had an attorney, being treated rather shoddily." Tr. 5/28/02 at 96. In light of this testimony, and taking the allegations in plaintiff's complaint as true, Wells' referral to the Special Investigation Unit does not make her atypical of other class members, but is only one manifestation of Allstate's discrimi-

---

9. Because the delay issue goes to the amount of damages rather than liability, this prospect of mini-trials on this issue is not a basis to deny class certification. *See* p. 17, *infra*.

nation against policyholders represented by counsel in its claims handling procedures.

A fourth point of distinction between Wells and other potential class members is the nature of her injury. Allstate divides the claims its receives into one of three units: represented claimants, unrepresented claimants, and special investigations. Allstate's corporate representative testified that each unit then contains two segments, or subunits, based on whether the nature of the claimant's injury is objective (e.g. bone fractures) or subjective (soft tissue injuries). *See* Tr. 5/29/02 at 12. Allstate claims that objective injuries, like Wells' leg fracture, are subject to different claims handling procedures than soft tissue injuries. *See id.* at 14. This argument again misses the thrust of Wells' allegations. Allstate's internal claims handling matrices indicate that it affords different treatment to claimants with the same types of injuries, based on whether or not they have retained an attorney. The relevant variable, in terms of the more stringent requirements allegedly giving rise to a delay in the settlement of a claim, is whether a claimant is represented by counsel, and in that respect, Wells is typical of the class.

Allstate's fifth argument against Wells' typicality is that she signed a unique release when she settled her individual claim, explicitly exempting claims under the Consumer Protection Act. The majority of Allstate claimants, according to defendant, sign one of two boilerplate releases. This argument presents a classic Catch–22: if Wells had not exempted her Consumer Protection Act claims, Allstate would likely contend that this created a unique defense to be raised against her. Although Wells executed a unique release to specifically preserve her class claims, the existence of general releases does not disqualify a class under Rule 23(a)(3). *See Bittinger v. Tecumseh Products Co.,* 123 F.3d 877, 884 (6th Cir.1997); *Wagner v. NutraSweet Co.,* 95 F.3d 527, 534–535 (7th Cir. 1996) ("NutraSweet's defense based on the releases went too far. Typicality under Rule 23(a)(3) should be determined with reference

to the company's actions, not with respect to particularized defenses it might have against certain class members.") (remanding for consideration as to whether releases precluded class certification). Moreover, the gardenvariety Allstate releases would not preclude participation in a class action premised on misrepresentation under the Consumer Protection Act, with damages based on delay in settlement, because the releases apply only to future claims for bodily injury and/or property damage attributable to the accident giving rise to the claim.[10]

In its final and most persuasive point, Allstate claims Wells is atypical because her claims are governed by a pre-amendment version of the Consumer Protection Act. Pre-amendment, the Act permitted recovery by "[a]ny consumer *who suffers any damage as a result* of the use or employment by any person of a trade practice" in violation of the Act. *See* D.C.Code § 28–3905 (2000), Historical and Statutory Notes (emphasis added). The Act as amended eliminates these requirements of injury in fact and causation. Defendant argues that Wells, who filed suit in March 2000 on the basis of a January 1998 accident and December 1998 claim, needs to meet the pre-amendment requirements, as would all other class members who made claims with Allstate before October 19, 2000, unlike class members who purchased their policies or filed claims later.

At this stage in the case, it is not possible to determine whether the October 19, 2000 amendment, which had the effect of making it easier for consumers to bring a claim under the Consumer Protection Act, applies retroactively. While it is true that "nonpenal statutes traditionally operate prospectively, unless there is evidence of legislative intent to the contrary," *Holiday v. United States,* 683 A.2d 61, 66 (D.C.1996), neither party has had occasion to brief the legislative history of the 2000 amendment, and the revised Act has yet to be interpreted by the District of Columbia Court of Appeals. The court will presume that the amendment does

---

**10.** The Allstate Release, Receipt, and Trust Agreement and the Receipt and Release specific to uninsured motorist coverage both apply only to a single specific accident, and contain blanks

to be filled in designating the date of the accident and whether the release applies to bodily injury, property damage, or both. *See* Def. Exs. 4–5.

not have a retroactive effect, and limit the class accordingly, but will amend the class definition if plaintiff is able to proffer evidence that the D.C. Council intended elimination of the causation and injury in fact elements of a Consumer Protection Act claim to apply retroactively.

Defendant devotes several pages of its brief in opposition to class certification to argue that proof of causation and injury in fact under the pre-amendment Consumer Protection Act will require a series of minitrials for each class member. This argument, however, assumes that Wells' misrepresentation claim is premised on false or misleading advertising—in other words, an affirmative misrepresentation. Defendant has been granted summary judgment on this claim. Only plaintiff's alternate theory, misrepresentation based on a material omission regarding Allstate's changes to its claim processing procedures, remains as a potential class issue. Allstate essentially ignores this theory of liability, which is much more amenable to class resolution.

A valid claims for damages under the pre-amendment Consumer Protection Act "requires a showing that the consumer suffered actual damages because of the misrepresentation or omission claimed to violate the Act." *Athridge v. Aetna Cas. and Sur. Co.*, 163 F.Supp.2d 38, 56 (D.D.C.2001) (citing *Osbourne v. Capital City Mortgage Corp.*, 667 A.2d 1321, 1329–1330 (D.C.1995) ("*Osbourne I*")). Causation, or proof that class members would not have purchased insurance coverage from Allstate had they but known of the defendant's claims processing policies, is based on a reasonable person standard, not individual proof.

At common law, in cases involving misrepresentation through "a failure to disclose, proof positive of reliance is not a prerequisite to recovery. All that is necessary is that the facts withheld be material in the sense that a reasonable [person] might have considered them important in making this decision." *Affiliated Ute Citizens v. United States*, 406 U.S. 128, 153–54, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972); *see also* Standardized Civil Jury Instructions for the District of Columbia, 20–2. Although no court has addressed this issue in the specific context of the Consumer Protection Act, a claim for misrepresentation through a material omission under the Act "requires the same burden of proof as does a common law claim for such misrepresentation." *Osbourne v. Capital City Mortgage Corp.*, 727 A.2d 322, 325 (D.C.1999) ("*Osbourne II*"). Although *Osbourne II* refers to the burden of proof (a clear and convincing evidentiary standard), it follows that the element of causation could also be proven through the same "reasonable person" standard applicable in the common law. The class will be able to demonstrate injury in fact, through the loss of the time value of their money, if it can be proven that Allstate's claims processing in fact caused the settlement of claims of those policyholders represented by counsel to be delayed in comparison to Allstate's settlement of comparable claims for its non-represented insureds.

If liability is found, the amount of damages awarded to each individual class member will likely vary, based on the length of delay, but this is not a valid reason to deny class certification. "[A] fraud perpetrated on numerous persons by the use of similar representations may be an appealing situation for a class action, and it may remain so despite the need, if liability is found, for separate determinations of the damages suffered by individuals within the class." Fed.R.Civ.P. 23(b)(3), Advisory Committee Notes, 1966 amendment. Plaintiff also points out that the damages issue is simplified by the Consumer Protection Act, which provides for either "treble damages, or $1,500 per violation, whichever is greater, payable to the consumer." D:C.Code § 28–3905. This statutory provision permits class members who are able to show causation, but cannot prove the amount of pecuniary damage suffered as a result, to opt for the default payment of $1,500.

The court finds that Wells' claims are typical of a class of claimants represented by counsel, whose claims predate the October 19, 2000 amendment of the Consumer Protection Act. Accordingly, the typicality prerequisite of Rule 23(a)(3) is met.

### 4. Adequacy of Representation

The requirement that "the representative parties will fairly and adequately protect the interests of the class," Fed.R.Civ.P. 23(a)(4), applies to both the class representative and class counsel.

> In determining whether a named representative in a class action is a fair and adequate representative within the meaning of rule 23(a)(4) we have considered two principal requirements: 1) the named representative must not have antagonistic or conflicting interests with the unnamed members of the class, and 2) the representatives must appear able to vigorously prosecute the interests of class through qualified counsel.

*National Ass'n for Mental Health, Inc. v. Califano,* 717 F.2d 1451, 1458 (D.C.Cir.1983) (internal quotation, citation omitted).

Allstate contends that Wells is an inadequate class representative, because her claim for damages is more limited than other potential class members, and further argues her attorneys, due to inexperience with class actions, are inadequate class counsel.

#### a. Wells' Adequacy as Class Representative

■ Wells' adequacy as a class representative, like her commonality and typicality, turns on whether her "claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Amchem,* 521 U.S. at 626, 117 S.Ct. 2231 (internal quotation omitted). Because Wells eventually received from Allstate a payment equal to the limits of her uninsured motorist policy, she is seeking damages only in the form of the lost time value of that money, or, in the alternative, the Consumer Protection Act's $1,500 statutory penalty. Defendant argues she has "improperly abandoned" the claims of absent class members. Such absent class members, according the Allstate, may have claims not only for delayed payment, but also for underpayment.

Allstate cites several cases from other jurisdictions where courts have declined to certify a class action on similar grounds. In those cases, the named plaintiffs had framed their claims narrowly, in order to circumvent problems with class commonality and typicality, but in doing so had abandoned certain claims for damages. *See Western States Wholesale, Inc. v. Synthetic Indus., Inc.,* 206 F.R.D. 271, 277 (C.D.Cal.2002) (plaintiff who sought injunctive relief and disgorgement of profits, but not damages for lost sales or market share, was inadequate class representative); *Thompson v. American Tobacco Co., Inc.,* 189 F.R.D. 544, 550 (D.Minn.1999) (plaintiffs in fraud and false advertising lawsuit against cigarette manufacturers held to be inadequate class representatives for moving to reserve the individual injury and damage claims and requesting only cessation and medical monitoring); *Feinstein v. Firestone Tire & Rubber Co.,* 535 F.Supp. 595, 606–07 (S.D.N.Y.1982) (class representatives were inadequate because they sought damages only for breach of warranty claim, but not for personal injuries or wrongful death).

However, the preference in this jurisdiction seems to be to certify classes that share the same legal theory of recovery, even if there is a potential difference between claimants with respect to the damages owed to each individual class member. "[A]ll putative class members share the same remedial theory, and any potential conflicts over damages can be addressed appropriately at a later point." *In re Lorazepam & Clorazepate Antitrust Litig.,* 202 F.R.D. at 28–29. *See also Watkins v. Blue Cross & Blue Shield Ass'n,* Civ. A. No. 86–1322, 1987 WL 19219, *1–2 (D.D.C. Oct. 20, 1987) (potential conflict between a named plaintiff seeking damages, and potential class members seeking injunctive relief, did not render the class representative inadequate).

In addition, any potential conflict is minimized by the limitation of the class to those who have already obtained a full or partial payment from Allstate. Those potential class members, who, like Wells, eventually received payments to the limits of their policy coverage or in the full amount requested, have no claim for damages other than the delay in receiving money owed to them. For those Allstate policyholders who were represented by counsel but received only partial payment of their claims, their representation

by counsel makes it likely that they have already pursued the legal remedies available to them for underpayment, or, in the event of a settlement, have released any claims for underpayment. As discussed above, Allstate has a practice of requiring policyholders to sign a release form as a condition of settlement, and those releases would likely preclude claims for underpayment, as opposed to a claim for delay in payment. Accordingly, the court finds that Wells is an adequate class representative.

### b. Adequacy of Class Counsel

■ The putative class is represented by two attorneys. Peter Chapin, the lead attorney, has extensive trial experience spanning more than thirty years, and has litigated numerous individual claims for uninsured motorist coverage. David Tompkins has focused his practice on personal injury civil litigation, including uninsured motorist claims, since 1998. *See* Pl. Mot., Ex. L–1, L–2. Neither, however, has previously participated in a class action lawsuit. *See id.*

In their prosecution of this case, Chapin and Tompkins have ably pursued Wells' individual claim, securing a settlement equal to the limits of her policy. Their ability to navigate through more than two years of litigation in this case, filing a motion for partial summary judgment that triggered a favorable settlement and surviving defendant's motion to dismiss and motion for summary judgment, is relevant to their adequacy as class counsel. *See Brown v. District of Columbia,* Civ. A. No. 91–0132, 1991 WL 255458, *2 (D.D.C. Nov. 15, 1991) ("Plaintiff's counsel is well aware of the factual predicate for this case and is qualified for the job: indeed, he successfully brought suit for an individual plaintiff."). Their experience with claims for uninsured motorist coverage, although in the individual recovery context, is also an indicator of adequacy. "[N]umerous courts have found that Rule 23(a)(4) was satisfied, noting that the attorney for the class is experienced in the field in which the suit was brought." 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane § 1769.1 (1986) (collecting cases).

Allstate, relying on a single, readily distinguishable case, contends that class counsel are inadequate because they have no prior experience in prosecuting class action lawsuits. *See Broussard v. Parish of Orleans,* No. 00–2318, 2001 WL 881290 (E.D.La. Aug. 3, 2001). In *Broussard,* plaintiff's counsel was a solo practitioner who had never previously handled a class action lawsuit. His inexperience, or incompetence, was manifested by his failure at the class certification hearing "to offer any evidence to support any of the six factors that plaintiffs need to prove to obtain class certification" and his failure to even address two of the four Rule 23(a) factors in his brief in support of the motion. *Id.* at * 6.

In contrast, class counsel here offered the testimony of three witnesses: Wells herself, expert witness Jay Frank, and an official from Virginia's Bureau of Insurance. The memorandum accompanying the motion for class certification addresses all the relevant factors in a competent, workmanlike manner. And while counsel in *Broussard* had "not initiated any contacts with [experienced class] counsel and did not identify who such counsel might be," *id.,* Chapin represented to the court that he has been in consultation with experienced class action attorneys and has offered to associate formally with such counsel in the event that he and Tompkins run into difficulty prosecuting this class action. *See* Tr. 5/29/02 at 156, 160.

Chapin and Tompkins meet the basic standard for adequacy of counsel. However, the court has serious concerns—not about their legal abilities or dedication, but about their inexperience in the prosecution of a class action, and the implications for the due process rights of potential class members. Allstate is unable to point to any procedural errors that have resulted from the inexperience of class counsel, and so far as the court is aware, Chapin and Tompkins have committed none. But the administration of a class, and prosecution of a class action, becomes significantly more complex once a class has been certified. Moreover, a finding that class counsel are adequate is in effect "the district court's Rule 23 seal of approval," *Pigford v. Veneman,* 292 F.3d 918, 926 (D.C.Cir.2002), not to be undertaken lightly. For those reasons, certification of this class

action is conditional on Chapin and Wells associating with counsel who have experience in prosecuting class actions. *See Cullen v. New York State Civil Serv. Comm'n,* 435 F.Supp. 546, 563–564 (E.D.N.Y.1977).

## B. Rule 23(b) Requirements

■ Plaintiff seeks certification under Rule 23(b)(3), which requires that class issues predominate over individual issues and that a class action be superior to other available methods of resolution. Relevant factors include the interest of class members in exercising individual control over their own action; the extent and nature of litigation concerning the controversy already commenced; the desirability or lack thereof of concentrating the claims in this forum; and the difficulties likely to be encountered in the management of this class action. *See* Fed.R.Civ.P. 23(b).

Here, common questions of fact and law predominate, and class action is superior to individual resolution of each individual's claim. As the Supreme Court has noted, "[p]redominance is a test readily met in certain cases alleging consumer or securities fraud or violations of the antitrust laws." *Amchem,* 521 U.S. at 625, 117 S.Ct. 2231. Allstate's alleged failure to disclose material changes to its claims handling procedures with respect to claimants represented by counsel is the legal basis for all class members' claims. " '[W]here members of a class are subject to the same misrepresentations and omissions, and where alleged misrepresentations fit within a common course of conduct, common questions exist and a class action is appropriate.' " *In re Newbridge Networks Sec. Litig.,* 926 F.Supp. 1163, 1176 (D.D.C.1996) (quoting *In re United Energy Corp. Sec. Litig.,* 122 F.R.D. 251, 254 (C.D.Cal.1988)).

According to defendant, innumerable "mini-trials" will be required for each class member, to determine causation, the validity of his or her underlying claim, the delay resulting from Allstate's claims-handling procedures, and the amount of damages. Allstate's arguments are not convincing, due in part to defendant's focus in its brief on a theory of affirmative misrepresentation

through false advertising that is no longer part of the case.

Allstate's arguments with respect to individual causation and damages issues do not prevent the proposed class from satisfying the predominance requirement of Rule 23(b)(3). In the context of class action lawsuits alleging "a large number of people were defrauded in an identical manner ... challenges pursuant to Rule 23(b)(3) because of reliance have usually been rejected, because reliance goes to the issue of damages rather than to the underlying, predominant, common issue of liability." *Johns v. Rozet,* 141 F.R.D. 211, 218 (D.D.C.1992) (citing H. Newberg, 1 Newberg on Class Actions § 4.26, at 326 (2d ed.1985)). Questions about the validity of a class member's underlying claim are resolved by the limitation of the class to those who have received at least a partial settlement of their claim. Defendant's arguments with respect to the various factors that may delay settlement does not defeat predominance or create insurmountable manageability problems. The delay argument is essentially a variation on the damages theme. If the class is able to prove that Allstate's practices contributed to a delay in settlement of their individual claims, any delay attributable to a claimant's own actions would act to reduce, but not eliminate, his or her entitlement to damages.

■ In addition, resolution on a class-wide basis is "superior to other available methods for the fair and efficient adjudication of the controversy." Fed.R.Civ.P. 23(b)(3). Rule 23(b)(3) favors class actions where common questions of law or fact permit the court to "consolidate otherwise identical actions into a single efficient unit." *Dellums v. Powell,* 566 F.2d 167, 189 (D.C.Cir.1977). This is such a case: resolution of the impact of Allstate's alleged material omission will resolve the issue of defendant's liability, or lack thereof, with respect to the entire class. A class action is superior where, as here, plaintiff has alleged "that a class action is the only viable way to bring this suit because the typical claims of class members are far too small for individual class members to maintain individual actions." *In re Newbridge Networks Sec. Litig.,* 926 F.Supp. at 1178; *see also Walton*

*v. Franklin Collection Agency, Inc.,* 190 F.R.D. 404, 412–413 (N.D.Miss.2000). This is a case where separate litigation of the individual claims, each involving, at most, a few thousand dollars, "would be both wasteful and unnecessary [because] the major issues can be resolved in a single proceeding." *Foltz v. U.S. News & World Report, Inc.,* 106 F.R.D. 338, 342 (D.D.C.1984).

## III. CONCLUSION

As set forth in the accompanying order, a class as defined in this memorandum is certified, on the precondition that plaintiff's counsel associate with and identify on the record an attorney(s) with prior experience in class action litigation.